GIUSEPPINA CHIULLA DE LUCA *vs.* BOARD OF PARK COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, May Term, 1919.
RORABACK, WHEELER, BEACH, GAGER and HAINES, Js.

An employee of a city, while at work raking leaves in one of its public parks, sought temporary shelter under a tree during a violent thunder storm, intending to resume his work thereafter, but was struck by lightning and killed. *Held* that the decedent had sustained a "personal injury arising out of and in the course of his employment," within the meaning of that expression in our Workmen's Compensation Act; for which his widow was entitled to compensation.

The Compensation Commissioner may resort to scientific authority and dicta in reaching his conclusion that there is greater danger of being struck by lightning in a thunder-shower, under a tree or in the open, than when protected in a house.

Argued May 7th—decided July 31st, 1919.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the first district in favor of the plaintiff, taken to and reserved by the Superior Court in Hartford County, *Case, J.*, upon the Commissioner's finding, for the advice of this court. *Superior Court advised to affirm the award of the Compensation Commissioner.*

The finding shows that on July 30th, 1918, the deceased was employed by the defendant in Colt Park in the city of Hartford, in raking leaves. While so employed, a thunder storm of considerable violence arose, and he and a fellow-workman took shelter under a nearby tree. While the deceased was thus being sheltered, the tree was struck by lightning and he was instantly killed. No other shelter had been provided for the deceased, and in seeking partial protection under the tree he was doing a natural thing and one which had theretofore been practiced under the employment of the defendant in similar circumstances.

Paragraph 8 of the finding is: "There is a clear preponderance of scientific authority to the effect that there is greater danger under a tree or in the open than when protected in a house. This is shown by statistics and by authoritative scientific dicta."

The Commissioner also took notice "of the commonly known fact that nearly all of the persons in a community such as Hartford are protected by dwelling-houses, business blocks, or factories, in time of a violent thunder-shower"; and in his memorandum of decision concluded that "the injured workman was subject to a greater hazard than that experienced by the community at large."

The plaintiff is the widow of the deceased and was dependent upon him for support at the time of his death.

*Robert P. Butler,* with whom was *Andrew J. Broughel,* for appellant (defendant).

*Ralph O. Wells,* for the appellee (plaintiff).

RORABACK, J. The defendant contends that the Compensation Commissioner erred in finding that "there is a clear preponderance of scientific authority to the effect that there is greater danger under a tree or in the open than when protected in a house. This is shown both by statistics and by authoritative scientific dicta."

The question presented by this assignment is one of fact. In passing upon this proposition it is of importance to notice some of the principles which direct the course of the proceedings before a Compensation Commissioner. This court has said: "He may hear the applicant at his residence. He proceeds to hearing without pleadings and without regard to the ordinary rules of evidence. He may make his inquiry through oral testimony or written and printed records best calculated to ascertain the substantial rights of the parties."

An "appeal" to the Superior Court from the finding and award of the Commissioner is an original application invoking the exercise of the judicial power of the Superior Court in order to determine whether the findings and award of the Commissioner are so unreasonable as to justify judicial interference, and whether they are within the limits of the powers vested in him; if they meet this test, the decision reached by the Commissioner must stand, otherwise his award may be set aside by the Superior Court. *Powers* v. *Hotel Bond Co.,* 89 Conn. 143, 148, 149, 93 Atl. 245.

To take judicial notice and to apply it to the decision of a case, is a right which appertains to every court of justice, from the lowest to the highest, and may be exer-

cised by this court. *Arthur* v. *Norfield Congregational Church,* 73 Conn. 718, 731, 49 Atl. 241.

Judicial notice, in its appropriate field, displaces evidence, since, as it stands for proof, it fulfils the object which evidence is designed to fulfil, and makes evidence unnecessary. *Brown* v. *Piper,* 91 U. S. 37, 43; *Commonwealth* v. *Marzynski,* 149 Mass. 68, 21 N. E. 228. The true conception of what is judicially known is that of something which is not, or rather need not, unless the tribunal wishes it, be the subject of either evidence or argument,—something which is already in the court's possession, or at any rate is so accessible that there is no occasion to use any means to make the court aware of it. *State* v. *Main,* 69 Conn. 123, 136, 37 Atl. 80. "The doctrine of judicial notice is not a hard and fast one. It is modified by judical discretion. . . . Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case." *St. Louis* v. *Niehaus,* 236 Mo. 8, 16, 139 S. W. 450, 452. It is clear that the Compensation Commissioner had the power to take notice of scientific authority and dicta in reaching the conclusion complained of.

We do not decide that there is greater danger under a tall tree in a thunder-shower than in other places, but we have no hesitation in holding that the Commissioner did not find this decisive fact without substantial evidence. Thus, in Appleton's American Cyclopædia (Vol. 10, p. 463) it is stated that "dangerous is it, therefore, to take shelter under a tree during a thunder gust." In the latest edition of The Americana (Vol. 17, p. 434) under the title "Lightning and Lightning Rods," the writer says that "fatalities are everywhere increased by the tendency to seek shelter from the rain when caught out in a storm, and these isolated shelters, as

trees, barns, monument buildings in public parks, etc., are among the most liable to be struck." In the Encyclopædia Britannica (Vol. 2, 11th Ed., p. 869, ¶35) under the title "Atmospheric Electricity," the writer says: " The fact that a considerable number of people sheltering under trees are killed by lightning is generally accepted as convincing proof of the unwisdom of the proceeding. When there is an option between a tree and an adjacent house, the latter is doubtless the safer choice." See, also, Paul Burt's "First Steps in Scientific Knowledge," p. 52. In Harper's Magazine (Vol. 41, p. 33) a tall tree is portrayed with electricity flowing from the highest point of the tree to the ground. This illustration is designated "The Natural Lightning-Rod." This illustration appears in an article entitled "The Mysteries of a Thunder Shower," which was written by Jacob Abbott, a famous juvenile writer and educator.

To repeat: The Compensation Commissioner has found that "there is a clear preponderance of scientific authority to the effect that there is greater danger under a tree or in the open than when protected in a house." This finding should stand, as it is not contrary to reason and is consistent with the evidence.

The remaining reasons of appeal present the claim that as a matter of law under no circumstances can death by lightning constitute a personal injury for which an allowance can be made under our Compensation Act.

If the place under the tree were the more dangerous, the fact that the deceased chose it as the place of refuge from the storm and that he was injured at this place, does not prevent recovery. The act of seeking and obtaining shelter arose out of, that is, was within the scope or sphere of his employment, and was a necessary adjunct and an incident to his engaging in and continuing

such employment. Obtaining shelter from a violent storm in order that he might be able to resume work when the storm was over, was not only necessary to the preservation of the deceased's health and perhaps his life, but was incident to the deceased's work, and was an act promoting the business of the master. L. R. A. 1916A, 348. See, also, *Richards* v. *Indianapolis Abattoir Co.*, 92 Conn. 274, 277, 102 Atl. 604, where it is said that the plaintiff "was injured while on duty, in his working hours, when waiting for an opportunity to continue his service of employment. The accident occurred when the plaintiff was at a place where he might reasonably be. There was no turning aside upon his part, no attempt to serve ends of his own."

In *Griffith* v. *Cole Bros.*, 183 Iowa, 415, 165 N. W. 577, L. R. A. 1918 F, 923, 15 Neg. & Comp. Cases Anno. 674, cited by the defendant as the most exhaustive American case "thus far reported on this subject," appear these significant statements (p. 430): "It is not intended to hold that injuries from lightning can in no case be due to an industrial employment. It has been rightly said that they can be. . . . Cases that hold a given accident from lightning did not arise out of the course of the employment recognize such injury may be related to the employment. See *Hoenig* v. *Industrial Commission*, 159 Wis. 646, 150 N. W. 996, L. R. A. 1916A, 339. And so of *Rodger* v. *Paisley School Board*, 1 Scots Law Times (1912) 271, wherein it is said: 'To be struck by lightning is a risk common to all and independent of employment, yet the circumstances of a particular employment might make the risk not the general risk, but a risk sufficiently exceptional to justify its being held that the accident from such risk was an accident arising out of the employment.'" Consistently with these decisions this court has repeatedly held that "a personal injury to an employee which is sustained while he is doing what he

was employed to do and as a proximate result thereof, 'arises out of and in the course of' his employment."

"An injury which is the natural and necessary incident of one's employment is proximately caused by such employment; as it is, also, when the employment carries with it a greater exposure to the injury sustained than the exposure to which persons generally in that locality are subjected." Our latest case sustaining this proposition is *Ahern* v. *Spier*, 93 Conn. 151, 105 Atl. 340.

The Superior Court is advised to affirm the award of the Compensation Commissioner.

In this opinion the other judges concurred.