DOROTHY MAY WHITE v. C. BARRETT GRAHAM, ADMINISTRATOR CTA FOR THE ESTATE OF STEVE EDWARD WHITE

No. 843DC476

(Filed 5 February 1985)

**Divorce and Alimony §§ 19.5, 21.8— separation agreement—support obligation—effect of Texas divorce decree**

The trial court erred in determining that plaintiff's action to enforce decedent's obligation to provide her support pursuant to the parties' separation agreement was barred by a Texas divorce decree which stated that "this property division supercedes [sic] and overcomes any prior agreements between the parties making them null and void," since a Texas court could not modify decedent's support obligation without plaintiff's consent; plaintiff received a petition for divorce which requested that the Texas court make a fair division of all property accumulated during the marriage, but she lacked notice of the risk that the Texas proceedings would deal with decedent's contractual support obligation; and the Texas decree should be given full faith and credit only to the extent that it nullified the property division provisions of the parties' prior agreement, leaving decedent's contractual support obligation intact.

APPEAL by plaintiff from *Rountree, Judge.* Judgment entered 14 December 1983 in CRAVEN County District Court. Heard in the Court of Appeals 8 January 1985.

Plaintiff Dorothy White and decedent Steve White married in May 1976 in Texas. Plaintiff, a New York native, had attended Texas A & M University. The couple, in the course of decedent's military service, moved in June 1976 to Virginia, returning to Texas for one year before arriving in North Carolina in June 1979. They entered into a "Separation Agreement" in December 1980. The agreement included general provisions dividing real and personal property and waiving any rights to share in the respective estates. It also contained a provision, entitled "Education," which recognized that plaintiff was attending Craven County Community College and planned to obtain a bachelor's degree at East Carolina University by May 1982. Decedent agreed to pay plaintiff's tuition and fees, acknowledging a desire "to support and maintain" plaintiff until she obtained such degree. The next paragraph provided as follows:

### SUPPORT AND MAINTENANCE OF WIFE

19. Husband shall support and maintain wife through May, 1982 at which time she should obtain a Bachelor of Science Degree from a college or university. Husband shall not be required to support and maintain wife after she graduates from a college or university. From the date hereof to and including the month of May, 1982, husband shall pay to wife the sum of Five Hundred Fifty and No/100 Dollars ($550.00), the sum of Two Hundred Seventy-Five and No/100 Dollars ($275.00) being paid on the 5th day of each month and the sum of Two Hundred Seventy-Five and No/100 Dollars ($275.00) on or before the 20th day of each month.

The agreement also released all other support obligations.

Decedent moved to Texas, his home state, where he filed a petition for divorce in January 1981. The petition contained a prayer for a property settlement. Plaintiff was duly served with the Texas summons and the petition, but did not respond or appear. A final divorce was entered in Texas in March 1981, which decreed that "this property division supercedes [sic] and overcomes any prior agreements between the parties making them

null and void." Decedent ceased making payments in May 1981 and plaintiff filed this action for specific performance of the agreement on 13 May 1981. Steve White died 26 May 1981, however, and C. Barrett Graham (hereinafter "defendant") was duly substituted. Plaintiff subsequently completed her degree, graduating in May 1982.

At trial, the major contested issue was whether the Texas decree was entitled to full faith and credit. The court, finding that plaintiff failed to show that the Texas court did not have jurisdiction, gave the Texas decree full faith and credit. It therefore concluded that plaintiff's claim was barred, and dismissed the action. Plaintiff appealed.

*Dunn & Dunn, by Donald J. Dunn, for plaintiff.*

*Beswick, Herring, Graham & Barnhill, by Stephen J. Herring, for defendant.*

WELLS, Judge.

A separation agreement is a contract, and the laws governing ordinary contracts apply. *See Lane v. Scarborough*, 284 N.C. 407, 200 S.E. 2d 622 (1973). Under North Carolina law, such an agreement may be modified only by the parties (absent circumstances not applicable here). *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E. 2d 793 (1982); *compare Henderson v. Henderson*, 307 N.C. 401, 298 S.E. 2d 345 (1983) (distinguishing agreement adopted by court). The death of Steve White did not terminate his obligation, which his estate could satisfactorily perform. *Shutt v. Butner*, 62 N.C. App. 701, 303 S.E. 2d 399, *disc. rev. denied*, 309 N.C. 462, 307 S.E. 2d 367 (1983). No fraud, failure of consideration, or other ground for rescission under North Carolina law appears. On the facts in this case, then, a North Carolina court could not nullify the separation agreement in a subsequent divorce. We must now determine whether a Texas court action has greater power.

It is well established in Texas that, where no children are involved, courts may only order division of marital property upon divorce. Public policy *forbids a court from ordering* payment of alimony after a final decree of divorce. *Francis v. Francis*, 412 S.W. 2d 29 (Tex. 1967), *followed Deen v. Deen*, 631 S.W. 2d 215 (Tex. Ct. App. 1982). However, Texas policy does not affect con-

tractual obligations to pay alimony; such agreements are accorded whatever force the law of contracts will give them. *Francis v. Francis, supra.* Texas policy also does not prevent enforcement of foreign money judgments predicated upon court-ordered support. *Layton v. Layton,* 538 S.W. 2d 642 (Tex. Civ. App. 1976) (*writ ref'd n.r.e.*). We have found no Texas authority for refusing to enforce contracts for support simply because they are entered into outside Texas. Texas has never adopted any policy reflective of an intent to provide a haven for spouses trying to escape their contractual obligations. Rather, Texas recognizes the sanctity of contracts and the "universal rule" that the validity and interpretation of a contract is determined by the law of the state where made, and if valid there is likewise valid elsewhere. *State of Calif.—Ment. Hyg. v. Copus,* 158 Tex. 196, 309 S.W. 2d 227 (1958), *cert. denied,* 356 U.S. 967 (1959); *Bergstrom A.F.B. Fed. Credit v. Mellon Mort.,* 674 S.W. 2d 845 (Tex. Ct. App. 1984) (Texas law controls only procedure). Steve White's death would not affect the validity of the contract under Texas law. *Republic National Bank of Dallas v. Beaird,* 475 S.W. 2d 344 (Tex. Civ. App. 1971) (*error refused*). A Texas court thus could not modify decedent's support obligation without plaintiff's consent. *Crutchley v. Crutchley, supra..* Even under Texas law, support agreements may not be modified (absent fraud, accident or mutual mistake) without the consent of the parties. *Deen v. Deen, supra.*

No Texas decision has attempted to deal with the question directly presented here, in large part because Texas long-arm jurisdiction and general recognition of foreign decrees have both been only recently expanded to conform to current notions of jurisdictional due process. *See* Tex. Fam. Code Ann. § 3.26 (Vern. Supp. 1984) *and Mitchim v. Mitchim,* 518 S.W. 2d 362 (Tex. 1975), *discussed in* J. Sampson, Interstate Spouses, Interstate Property, and Divorce, 13 Tex. Tech. L. Rev. 1285 (1982). In light of the Texas courts' continued recognition of support agreements in the face of the state policy forbidding alimony, and the courts' willingness to enforce judgments based on foreign support orders, we conclude that Texas would not deviate from the general rule that provisions in a separation agreement providing for support are not automatically abrogated by a subsequent absolute divorce. *See* 24 Am. Jur. 2d *Divorce and Separation* § 851 (1983); 27B C.J.S. *Divorce* § 301(2)d (1959). Rather, the Texas cases appear to

go to some length in the opposite direction to avoid the potential-ly harsh results of the "no alimony" rule. *See Conner v. Bean*, 630 S.W. 2d 697 (Tex. App. 1981), *writ ref. n.r.e.* ("property settle-ment" need not refer to any property; enforceable post divorce); *Cornell v. Cornell*, 413 S.W. 2d 385 (Tex. 1967) (monthly payments until marriage or eligibility for Social Security held property set-tlement; enforceable). We therefore conclude that a Texas court would not undertake, absent plaintiff's consent, to nullify the sup-port provisions of the North Carolina agreement.

Nevertheless, argues defendant, the Texas decree purports to nullify any prior agreements between these parties, and if the decree contained error of law, those errors must be addressed in the courts of Texas, not North Carolina; otherwise, the decree is entitled to full faith and credit by the courts of this state. U.S. Const. Art. IV, cl. 1. North Carolina courts may entertain attacks on foreign judgments on the grounds of lack of jurisdiction, fraud, or public policy issues. *Courtney v. Courtney*, 40 N.C. App. 291, 253 S.E. 2d 2 (1979). Plaintiff therefore attempted to attack the Texas court's exercise of *in personam* jurisdiction. However, the validity of that exercise involved questions of Texas, not North Carolina, law. Plaintiff, with the burden of overcoming the pre-sumption of validity afforded foreign judgments, failed (both in the trial court and this court), to present any Texas authority in-dicating that Texas' excercise of jurisdiction was improper. The trial court thus did not err in granting the decree full faith and credit.

The trial court did err, however, in the extent it allowed the decree effect. The due process clause of the Fourteenth Amend-ment requires not only that a foreign court must otherwise have jurisdiction, but also that parties have *actual notice* of the pro-ceedings. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). Such notice must include not only jurisdictional notice (summons) but also notice of the nature of the proceedings (com-plaint). *Id.; see Childress v. Forsyth County Hospital Auth.*, 70 N.C. App. 281, 319 S.E. 2d 329 (1984), *disc. rev. denied*, --- N.C. ---, --- S.E. 2d --- (filed 8 January 1985); N.C. Gen. Stat. § 1A-1, Rules 3, -4 of the Rules of Civil Procedure (1983). Plaintiff re-ceived a petition for divorce, which requested that the Texas court make a fair division of all property accumulated during the marriage. She had a contract between herself and decedent,

which included an executed property settlement; the only executory provisions were those detailed above providing for plaintiff's support, which clearly constituted valid and binding support provisions under both North Carolina and Texas law. *Crutchley v. Crutchley, supra; Deen v. Deen, supra.* Under Texas law, a property division decree could not affect a valid support agreement, and in fact a Texas court would probably take extra care not to interfere with a valid support agreement in light of that state's "no alimony" rule. We conclude, therefore, that plaintiff lacked notice of the risk that the Texas proceedings would deal with decedent's contractual support obligation.

More importantly, we are constrained by the full faith and credit clause to treat foreign judgments the same as domestic judgments. *Boyles v. Boyles*, 59 N.C. App. 389, 297 S.E. 2d 405 (1982), *aff'd*, 308 N.C. 488, 302 S.E. 2d 790 (1983). They do not receive *extra* deference. An elementary North Carolina rule in the interpretation of judgments is that the pleadings, issues and other circumstances of the case must be considered. *Coach Co. v. Coach Co.*, 237 N.C. 697, 76 S.E. 2d 47 (1953); *Berrier v. Commissioners*, 186 N.C. 564, 120 S.E. 328 (1923). Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole, in light of practicality and the intention of the court. 46 Am. Jur. 2d *Judgments* §§ 73-76 (1969). And if a judgment is subject to two interpretations, the court will adopt that one which makes it harmonize with the applicable law. *Alexander v. Brown*, 236 N.C. 212, 72 S.E. 2d 522 (1952). The full faith and credit clause does not require that a decree valid as to one particular must be literally enforced as to all aspects. *Vanderbilt v. Vanderbilt*, 354 U.S. 416 (1956).

The Texas judgment was based on a petition for divorce and property division, and plaintiff received notice of a property division action. The decree provides exclusively for divorce and property division, making no mention of support or alimony. The language relied upon by defendant is that "this property division supercedes [sic] and overcomes any prior agreements. . . ." We do not interpret this language as nullifying any and all agreements, of whatever nature, between the parties. Rather, in view of the purposes of the order as a whole, in light of the facts of the case, and in harmony with the law of Texas regarding support, we interpret the decree to nullify *only* the property division provisions

of the prior agreement, and we give it full faith and credit only to that extent, leaving decedent's contractual support obligation intact. Both the constitutional notice considerations discussed above and practical rules of interpretation support this ruling.

A review of the public policy of both Texas and North Carolina provides further support. The law in both states strongly favors enforcing contracts as written, wherever they may be entered into. Policy does *not* favor allowing spouses to escape their lawful support obligations simply by crossing state lines. Both Texas and North Carolina have enacted the Uniform Reciprocal Enforcement of Support Act to prevent such misconduct. Tex. Fam. Code Ann. § 21.01 *et seq.* (Vernon 1975); N.C. Gen. Stat. § 52A-1 *et seq.* (1976). Texas has judicially refused to apply its public policy prohibiting court-ordered alimony to decrees of other states, *Layton v. Layton, supra,* by extension indicating at least equal protection to the preferred (in Texas) method of providing for support by contract including contracts entered into outside Texas. North Carolina has legislatively recognized separation agreements as binding in all respects as long as consistent with public policy. N.C. Gen. Stat. § 52-10.1 (Supp. 1983). And North Carolina continues to recognize a post-divorce obligation to provide continued support. N.C. Gen. Stat. § 50-16.1 *et seq.* (1976 and Supp. 1983).

We therefore conclude that the trial court erred in according full faith and credit to the Texas decree, in interpreting it to mean that it barred the present action to enforce decedent's contractual obligation to provide support. The court's order is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges ARNOLD and COZORT concur.