JAMES LEE REAVIS v. MARGIE KAY JAMES REAVIS

No. 8522DC1255

(Filed 15 July 1986)

**Divorce and Alimony §§ 19.5, 24.5— child support—alimony and property settlement—lump sum payment—no refund upon change in child custody**

A lump sum payment of $17,000 to defendant wife upon her withdrawal from the marital home pursuant to a consent judgment represented not only child support but also a negotiated settlement of defendant's property and support rights and included the effect of foreseeable changes in any of those matters, and the trial court had no authority to order a refund to plaintiff husband of a *pro rata* portion of the lump sum payment, absent the reservation of a right of amendment, when custody of a minor child who had been residing with defendant was transferred to plaintiff.

APPEAL by defendant from *Johnson (Robert W.), Judge.* Judgment entered 24 September 1985, and orders entered 26 September 1985 in District Court, IREDELL County. Heard in the Court of Appeals 10 April 1986.

Defendant appeals a judgment directing repayment of a portion of a lump sum payment and enjoining her from using the balance in her account, as well as orders denying Rule 41 and Rule 56 motions for judgment in her favor.

Defendant wife and plaintiff husband married in 1962. They had four children, born 1963, 1965, 1968, and 1970. The parties

separated in 1976 and executed a separation agreement. The agreement released all claims for alimony and recited that all marital personal property had been divided. Plaintiff agreed to pay defendant $125 per week as "support and maintenance of herself and their four minor children," and to provide for the children's medical needs. The parties agreed that defendant would retain exclusive possession of the marital home "for herself and the children" until the youngest child attained majority. At the time of the separation, title to the marital home, having been conveyed three months earlier, was held by plaintiff's father as trustee. A final divorce based on one year's separation followed in 1977. The divorce judgment incorporated the terms of the separation agreement, "it being specifically ordered that the support and maintenance provided for thereunder be deemed child support. . . ."

Plaintiff's father later demanded rent and threatened to evict defendant and the children. The court construed the judgment in May 1983, ruling that plaintiff had agreed to provide the marital home or "comparable housing." The court ordered plaintiff to pay the rent demanded of defendant by his father or provide similar housing. The court's order referred in some places to plaintiff's obligation to provide housing for "defendant" and for "defendant and the minor children" and in others simply for "the minor children."

In September 1983, following further disputes on various matters, a consent judgment was entered which settled the issue of custody of the two children who were still minors. Plaintiff received custody of Clark, then 15, and defendant received custody of Chuck, then 13. Plaintiff agreed to pay the child support arrearages and with his father, to pay $17,000.00 in a lump sum to settle all future matters as follows:

> 8. That plaintiff and [his father] shall pay to [defendant's attorney] $17,000.00 which money shall be held in escrow by said attorney and be paid to defendant at such time as defendant removes herself from the marital home located on Wedgewood Drive, which removal shall be on or before October 2, 1983; that if defendant does not remove herself from said marital home by that date then, in that event, said attorney is to return the $17,000.00 payment to plaintiff and

[his father]; that if said payment is paid to defendant upon defendant's compliance with this condition, the payment shall be in satisfaction of all future support defendant shall have the right to receive from either [his father] or plaintiff for housing or for the minor children.

The $17,000.00 was paid over to defendant.

Thereafter Chuck, then 15, expressed a desire to live with plaintiff instead of with defendant. He moved to plaintiff's home in June 1985. Plaintiff then filed a motion in August 1985 requesting that custody of Chuck be transferred, that defendant pay weekly support, and that defendant pay the balance of the $17,000.00 to plaintiff for Chuck's benefit. Defendant did not contest custody nor her prospective obligation to pay some reasonable amount as child support. However, she contended that the payment provided by the original agreement was in lieu of alimony for herself, and asked that the plaintiff's request for repayment be denied. Defendant's motions for summary judgment and to dismiss were denied.

By judgment filed 24 September 1985 the court found that the lump sum payment of $17,000.00 "was made in consideration of the defendant maintaining the care, custody and control of Chuck Reavis." The court then ordered that since defendant no longer had custody of Chuck, who lived with plaintiff, defendant should in fairness repay to plaintiff a portion of the lump sum proportional to the ratio of the length of time between Chuck's decision to live with plaintiff and his majority to the total time from the consent judgment to majority. From judgment for plaintiff for $10,200.00, defendant appeals.

*T. Michael Lassiter for plaintiff-appellee.*

*Harris, Pressly & Thomas, by Edwin A. Pressly, for defendant-appellant.*

EAGLES, Judge.

The determinative question here is whether the trial court had authority to order repayment of a portion of the lump sum, which in obedience to a final judgment had been paid in full. Defendant argues that the lump sum payment represented at least in part a property settlement, and therefore could not be

modified since it had been fully executed. Plaintiff argues that the $17,000.00 was paid solely for child support and that orders for child support, including lump sum payments, are modifiable at any time.

I

We first consider what type of question this appeal presents in order to determine the proper standard of review. The essential facts do not appear to be in dispute. Rather, the parties differ over the nature and interpretation of various judgments. The trial court was called on to decide whether the housing provisions of the separation agreement, as modified, should be construed as an agreement for child support or otherwise. A court with authority to render a judgment also has power to construe and clarify its own judgments. The construction of a judgment presents a question of law for the court. 49 C.J.S. Judgments Section 436 (1947), *cited in Alexander v. Brown*, 236 N.C. 212, 72 S.E. 2d 522 (1952). The trial court's rulings on questions of law are fully reviewable on appeal. *N.C. Reinsurance Facility v. N.C. Insurance Guaranty Assn.*, 67 N.C. App. 359, 313 S.E. 2d 253 (1984).

Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole. *White v. Graham*, 72 N.C. App. 436, 325 S.E. 2d 497 (1985). The interpreting court must take into account the pleadings, issues, the facts of the case, and other relevant circumstances. *Queen City Coach Co. v. Carolina Coach Co.*, 237 N.C. 697, 76 S.E. 2d 47 (1953); *White v. Graham, supra*.

The original separation agreement made provision for periodic payments for "support and maintenance," which payments were deemed by the divorce judgment to be child support. Defendant received no payments of alimony or support in her own right, but she did not formally renounce her rights to the payments. Apparently she had initially claimed those payments on the grounds of his relationship with another woman. Occupation of the marital home was separately provided for, for the benefit of defendant *and* the children. It is clear that the occupation of the home until the children became of age was at least in part a settlement of property or alimony rights for the benefit of defendant herself, as the express language of the agreement indicates. It undoubtedly constituted some part of the consideration

for the remainder of the agreement. That the provision terminated upon the majority of the youngest child, while relevant, does not require a different result.

The court's order of May 1983 contains conflicting language in this regard. At one point it recites that the housing was "for the benefit of the minor children," at several places it discussed housing "for defendant and the minor children" and noted at another that plaintiff was obligated to provide "defendant" with comparable housing without mentioning the children. We note that the May 1983 order resulted from proceedings to evict not just defendant, but defendant *and* the children from the home. We believe that the court was only addressing that problem (the wholesale eviction of the family) at that time, and that the inconsistent references to housing for certain parties or for certain persons' benefit did not represent a considered construction of the judgment.

The language of the consent judgment subsequently entered into supports this interpretation. Payment of the $17,000 lump sum was in satisfaction of *defendant's* rights to future support, *not* for the benefit of the minor children or for housing for them, *but* for support *defendant* had the right to receive for "*housing or* for the minor children.*" This language, as well as the very nature of the lump sum payment, clearly reflects some separate property settlement/support interest of defendant herself in the lump sum, as well as child support.

## II

Having reached this conclusion, we now must decide its effect on the court's power to modify the executed lump sum payment provision. In *Walters v. Walters*, 307 N.C. 381, 298 S.E. 2d 338, *reh'g denied*, 307 N.C. 703 (1983), the Supreme Court considered modification of interspousal consent judgments. The court noted that they are modifiable "within certain carefully delineated limitations," *id.* at 385, 298 S.E. 2d at 341, suggesting that the modification powers of the courts should be exercised cautiously. This is consistent with the general rule limiting attacks on consent judgments to certain narrow grounds. *In re Johnson*, 277 N.C. 688, 178 S.E. 2d 470 (1971). The *Walters* court went on to rule that if the contested provisions concerned alimony, modification would be proper under G.S. 50-16.9. "However,

if the provisions in question concern some aspect of a property settlement, then it may be modified only so long as the court's order remains unsatisfied as to that specific provision." 307 N.C. at 385, 298 S.E. 2d at 341. *See also Rowe v. Rowe*, 305 N.C. 177, 287 S.E. 2d 840 (1982) (presumption that property settlement and support provisions separable).

We noted earlier that the courts generally are reluctant to allow attacks on consent judgments. This policy stems in part from the recognition that a consent judgment, in the absence of fraud, duress or mutual mistake (none of which appear here), represents a negotiated agreement reached with an eye to events likely to follow the judgment. The possibility that Chuck might die, move away, or become emancipated before reaching majority cannot have been totally unforeseen by the parties at the time they agreed on the lump sum. We note that the judgment itself made no provision for such occurrences.

We are aware also that a judgment, from which no appeal is taken and which is paid in full, cannot ordinarily be reopened. *Bunker v. Bunker*, 140 N.C. 18, 52 S.E. 237 (1905). In domestic situations we have occasionally countenanced modifications of judgments where there were unpaid past due payments, but only where compelling equitable circumstances exist. *See Gates v. Gates*, 69 N.C. App. 421, 317 S.E. 2d 402 (1984), *aff'd* 312 N.C. 620, 323 S.E. 2d 920 (1985). We have found no North Carolina domestic case, including those where (unlike this case) there were compelling equities, where the courts have ordered a refund of payments *already made*. Accordingly, we are inclined to believe that the court here did not have authority to modify the consent judgment to order repayment of part of the lump sum.

Decisions of other jurisdictions in similar fact situations support this result. In *Petty v. Petty*, 479 So. 2d 1288 (Ala. Civ. App. 1985), the trial court attempted to reduce the unpaid balance of a consent judgment calling for a $10,000 lump sum payment of child support, where only $3,500 had in fact been paid. The Court of Civil Appeals reversed, holding that the lump sum became a final judgment on the date due and could not be modified thereafter. In *Hunter v. Hunter*, 13 Ark. App. 204, 681 S.W. 2d 424 (1984), the court held that the rent-free disposition of the marital home to mother in a consent judgment could not be modified even though

the minor children had moved in with their father. The disposition of the home, held the court, constituted one part of the consideration on which all the other parts of the agreement were based and hence was not modifiable. The *Hunter* court relied on *McInturff v. McInturff*, 7 Ark. App. 116, 644 S.W. 2d 618 (1983), where the court held a lump sum payment to mother could not be modified, although the minor children had moved in with the father who had obtained legal custody. The parties' separation agreement there represented a single integrated disposition of all matters, including property settlement, alimony and child support, and father could therefore not receive a *pro rata* refund of the lump sum. *Compare, Pauley v. Pauley*, 263 S.E. 2d 897 (W. Va. 1980) (lump sum child support could be increased, even though dependent spouse had agreed not to seek additional support).

From the foregoing discussion we conclude that the lump sum payment represents *not only* child support, but that it constituted a negotiated settlement of all matters of dispute between the parties including the effect of foreseeable changes in those matters, that there are no compelling equitable circumstances justifying a refund. We conclude further that there appears to be no authority for ordering refunds of lump sums which have been paid in full where no right of amendment has been reserved. Indeed, the limited authority of this and other states supports the opposite result. On these facts, therefore, the trial court did not have authority to reduce the lump sum payment and order a refund.

One practical consideration reinforces our decision. Unless the power of the trial courts to modify lump sum agreements is carefully circumscribed, the agreements' usefulness as negotiated settlements will be substantially diminished. The public policy of this State seeks to promote certainty and finality in domestic dispute resolution. *See Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E. 2d 100 (1986). Our decision today serves that policy. Recognizing a general power to modify *executed* lump sum payments would not, and might instead touch off new waves of domestic litigation.

Since we have determined that the trial court was without authority to order a refund here, we need not reach the remaining questions. The trial court's order is hereby vacated, and the

injunction barring defendant's use of the balance of the funds is dissolved.

Vacated; injunction dissolved.

Judges WEBB and PARKER concur.