KENNETH HEATHERLY, Employee, Plaintiff v. THE HOLLINGSWORTH COMPANY, INC., Employer, STONEWOOD INSURANCE COMPANY, Carrier, Defendants

No. COA10-994

(Filed 19 April 2011)

1. **Workers' Compensation— compensable injury—increased risk—lightning strike—expert testimony not required— findings and conclusions**

The Industrial Commission did not err in a workers' compensation case in finding and concluding that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment. Plaintiff was not required to present expert

evidence to establish that his employment exposed him to an "increased risk" of being struck by lightning. The non-expert evidence supported the Commission's findings which, in turn, supported the conclusion that plaintiff's employment peculiarly exposed him to risk of injury from lightning greater than that of other persons in the community.

**2. Workers' Compensation— temporary total disability benefits—testimony sufficient**

The Industrial Commission did not erroneously conclude in a workers' compensation case that plaintiff was entitled to temporary total disability benefits for the period of 12 July 2004 to 2 January 2005. Plaintiff's testimony regarding the pain in his fractured right hand and his inability to work at all was sufficient to support the Commission's determination that plaintiff was temporarily totally disabled during the relevant period.

**3. Workers' Compensation— additional medical treatment— properly determined**

The Industrial Commission properly determined that plaintiff was entitled to additional medical treatment reasonably related to his compensable hand injury.

Appeal by defendants from opinion and award entered 7 May 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 January 2011.

*Bazzle, Carr & Parce, P.A., by Ervin W. Bazzle, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Bambee B. Blake and Ginny P. Lanier, for defendants-appellants.*

HUNTER, Robert C., Judge.

Defendant-employer The Hollingsworth Company, Inc. and defendant-carrier Stonewood Insurance Company appeal the Industrial Commission's decision awarding plaintiff Kenneth Heatherly temporary total disability and medical benefits. After careful review, we affirm.

<u>Factual and Procedural Background</u>

The underlying facts regarding plaintiff's injury and treatment are set out in greater detail in this Court's prior opinion in this case. *See*

*Heatherly v. Hollingsworth Co.*, 189 N.C. App. 398, 398-99, 658 S.E.2d 30, 31 (2008). Pertinent to this appeal, during July 2004, plaintiff was working as a framer and drywall hanger for his brother Randy Heatherly's construction company CDS Drywall. On 12 July 2004, plaintiff was working at a job site where a new house was being built on Ridge Mountain in Brevard. The job site was located "at or near the top of the mountain," near some metal towers. The house under construction had a metal roof and weather vanes had been attached to the top of the roof. Plaintiff and the rest of the construction crew set up their equipment in the unfinished garage, which did not have doors, and ran all of their electrical cords for their equipment from the garage to various locations around the house. That day, plaintiff was hanging drywall inside the house with his uncle Billy Cole Justice.

The construction crew stopped work early on 12 July 2004 due to inclement weather, including rain, thunder, and lightning. Plaintiff called his brother from a "landline" in the garage to inform him that the crew was finishing working for the day due to the weather. While making the call, plaintiff was standing inside the unfinished garage, with his left leg on the floor and his right leg propped up against the drywall, approximately five feet from the entrance to the garage and several feet from an electrical drop cord and the electrical outlet the crew used to power their equipment. Lightning was striking outside and sparks were "flying" from the drop cord. Plaintiff was struck by an "electrical charge or jolt from the lightning," throwing him backwards roughly eight feet through the air. As plaintiff landed, he struck his head, shoulders and right arm on the garage's concrete floor. Although he was "dazed and confused," plaintiff was conscious; plaintiff felt pain and a "burning sensation" in his right hand and left foot.

Mr. Justice drove plaintiff to Transylvania Community Hospital in Brevard, where he primarily complained of pain in his right hand and left foot. X-rays of plaintiff's right hand showed closed right fourth and fifth metacarpal fractures. Plaintiff was given morphine for the pain. Plaintiff's brother, who visited him in the hospital, noticed bruising and swelling to his right hand that had not been there the day before. Although plaintiff was referred to an orthopaedic surgeon for treatment of his hand fractures, plaintiff did not receive further treatment due to defendants' denial of his workers' compensation claim and his lack of health insurance. Plaintiff did not return to work until 3 January 2005.

After conducting a hearing on 28 January 2005, the deputy commissioner issued an opinion and award on 6 January 2006, in

which the deputy commissioner awarded plaintiff past and future medical benefits as well as temporary total disability benefits for the period of 12 July 2004 through 2 January 2005. Defendants appealed to the Full Commission, which affirmed the deputy commissioner's decision with minor modifications. On defendants' appeal to this Court, we determined that the Full Commission had erroneously applied the "positional risk" test rather than the "increased risk" test, as set out in *Pope v. Goodson*, 249 N.C. 690, 107 S.E.2d 524 (1959), in "reaching its ultimate conclusion of law that plaintiff's injury arose out of and in the course of his employment . . . ." *Heatherly*, 189 N.C. App. at 399, 658 S.E.2d at 31. Consequently, this Court "reverse[d] the Full Commission's opinion and award and remand[ed] the matter to the Full Commission to make new findings of fact and conclusions of law in accordance with the 'increased risk' principles set forth in *Pope*." *Id.* at 401, 658 S.E.2d at 32.

On remand, the Commission amended its opinion and award to include findings of fact and conclusions of law regarding whether plaintiff's employment exposed him to an "increased risk" of being struck by lightning. Specifically, the Commission concluded, based on its findings that "[t]he work conditions at the time of Plaintiff's injury [a]re consistent with several of the factors set forth in *Pope*," that plaintiff's "employment placed him at an increased risk of sustaining injuries due to lightning greater than members of the general public in that neighborhood, and therefore, the danger to which he was exposed was incident to his employment." The Commission, accordingly, awarded plaintiff temporary total disability benefits as well as past and future medical treatment. Defendants timely appealed to this Court.

Standard of Review

Appellate review of a decision by the Industrial Commission is limited to "reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission, as the fact-finding body, "is the sole judge of the credibility of the witnesses and the weight of the evidence, and its [factual] determination[s] [are] binding on appeal, if supported by competent evidence, even though the evidence might also support contrary findings." *Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 389, 465 S.E.2d 343, 345, *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996). The Commission's conclu-

sions of law, however, are reviewed de novo. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

I

**[1]** Defendants first contend that "[t]he Industrial Commission erred in finding and concluding that plaintiff sustained a compensable injury by accident arising out of and in the course of his employment, as plaintiff failed to present expert evidence that his employment placed him at an increased risk of sustaining a lightning strike over the general public." As our Supreme Court has explained, the Workers' Compensation Act "does not contemplate compensation for every injury an employee may receive during the course of his employment but only those from accidents arising out of, as well as, in the course of employment." *Bryan v. T.A. Loving Co.*, 222 N.C. 724, 728, 24 S.E.2d 751, 754 (1943); N.C. Gen. Stat. § 97-2(6) (2009). In lightning strike cases, "[t]he generally recognized rule is that where the injured employee is by reason of his [or her] employment peculiarly or specially exposed to risk of injury from lightning—that is, one greater than other persons in the community,—death or injury resulting from this source usually is compensable as an injury by accident arising out and in the course of the employment." *Pope*, 249 N.C. at 692, 107 S.E.2d at 525-26.

"Whether an accident arose out of the employment is a mixed question of law and fact." *Sandy v. Stackhouse, Inc.*, 258 N.C. 194, 197, 128 S.E.2d 218, 221 (1962). Whether an employee's job exposed him or her to an increased risk of injury by accident is a question of law. *Dillingham v. Yeargin Construction Co.*, 320 N.C. 499, 502, 358 S.E.2d 380, 382 (1987); *Heatherly*, 189 N.C. App. at 400, 658 S.E.2d at 31.

Defendants claim that the Supreme Court's decision in *Pope* "clearly requires workers' compensation claimants to present expert testimony that proves the requisite increased risk in lightning strike cases." In *Pope*, 249 N.C. at 692-93, 107 S.E.2d at 526 (internal citation omitted), the Supreme Court exhaustively surveyed caselaw from the "courts of the land" in order to answer "the question of if and when an accidental injury or death due to a true Act of God in the form of a bolt of lightning arises 'out of' the employment . . . ." After summarizing numerous cases and their holdings, the *Pope* Court concluded:

[T]he great majority of the courts have reached the conclusion that the workman is entitled to compensation for injuries produced by lightning in all cases where he was subjected to a danger

from lightning greater than were the other people in the neighborhood; that is, Was the danger to which he was subjected one which was incident to the employment, or was it one to which other people, the public generally, in that neighborhood, were subjected?

*Id.* at 696, 107 S.E.2d at 528. The Court then applied the "increased risk" test, as articulated in lightning strike cases, to the facts of that case, holding:

The evidence shows that Pope, when killed by lightning, by reason of his employment had on wet clothes, and had tied around his waist a nail apron containing nails, and that these circumstances, incidental to his employment, peculiarly exposed him to risk of injury from lightning greater than that of other persons in the community. Such being the case his death is compensable under our Workmen's Compensation Act as an injury by accident arising out of and in the course of his employment.

*Id.* at 698, 107 S.E.2d at 529-30.

We do not believe, as defendants suggest, that "*Pope* confirms the requirement of expert testimony." As defendants acknowledge, *Pope* involved expert testimony regarding "the effect lightning might have and its behavior." *Id.* at 697, 107 S.E.2d at 529. Consequently, as the Court held that the *evidence presented in that case*, which consisted of expert testimony, was sufficient to support the Commission's determination that the employee's job exposed him to an increased risk of injury by lightning, the existence of the expert evidence obviated the need for the Court to determine—and it did not determine—whether expert evidence is, in fact, required.

Defendants nonetheless point out that the *Pope* Court cites as "support[ing] [its] position," *id.* at 696, 107 S.E.2d at 528, the Indiana Supreme Court's decision in *E. I. Du Pont De Nemours Co. v. Lilly*, 226 Ind. 267, 272-73, 79 N.E.2d 387, 389 (1948), where the court upheld the industrial board's determination that the employee's death from being struck by lightning arose out his employment based on expert evidence "that the risk or hazard was increased; [and] that the [employee] was more exposed to injury by lightning than others in the same locality and not so engaged[.]" Defendants' isolated focus on *Pope's* reference to *E. I. Du Pont De Nemours Co.* ignores the fact that *Pope* also cited to at least six cases in which the employees' jobs were held to expose them to an increased risk of lightning injuries

despite no expert evidence being presented on the issue. *See Truck Ins. Exch. v. Indus. Acc. Comm'n*, 77 Cal. App. 2d 461, 466, 175 P.2d 884 (1946) ("The [industrial accident commission's] implied finding that there is increased danger from lightning to one who is standing upon the wet roof of a building during a storm is in accordance with common knowledge and requires no supporting expert testimony."); *Chiulla de Luca v. Bd. of Park Com'rs*, 94 Conn. 7, 10, 107 A. 611, 612 (1919) (holding that compensation commission, in determining whether decedent's employment exposed him to an increased risk of injury by lightning, could take judicial notice of "scientific authority" establishing that "there is greater danger [of being struck by lightning] under a tall tree in a thunder-shower"); *Bauer's Case*, 314 Mass. 4, 6, 49 N.E.2d 118, 120 (1943) ("Certain facts as to the operation of lightning have become matters of common knowledge, of which judicial notice may be taken. We think that it could have been found, without expert evidence, that a person in wet clothes, standing close to an iron bed and near to an electric light and electric wiring, in a building on the top of an exposed hill, was in a position of unusual danger from lightning." (internal citations omitted)); *Buhrkuhl v. F. T. O'Dell Const. Co.*, 232 Mo. App. 967, 972, 95 S.W.2d 843, 846 (Mo. Ct. App. 1937) (finding "no serious doubt" that "there was sufficient competent evidence to show that [the decedent's] employment had brought about an excessive exposure to the lightning which killed him," despite the fact that the claimant "introduced not a word of expert evidence regarding the characteristics and propensities of lightning or atmospheric electricity," where the evidence showed that the comparative height of the barn in which the decedent took shelter during storm "exposed [him] to a risk and danger from lightning greater than that confronting the neighborhood generally"); *Consolidated Pipe Line Co. v. Mahon*, 152 Okla. 72, 77, 3 P.2d 844, 850 (1931) (holding industrial commission could properly take judicial notice of "generally known" principle that a dilapidated frame house without doors or windows, containing metal, and surrounded by metal fencing, such as the one decedent took refuge in during storm, "is much more liable to be struck by lightning . . . than the average house in the same locality"); *Nebraska Seed Co. v. Indus. Comm'n*, 206 Wis. 199, 201, 239 N.W. 432, 433 (1931) (affirming industrial commission's determination, without expert evidence, that "[t]he building into which [the employee] entered was so situated, and its height above the surrounding surface was such, as to increase the danger from lightning" and that "[i]t all resulted in an unusual risk of such an accident incidental to the employment").

**HEATHERLY v. THE HOLLINGSWORTH CO., INC.**

[211 N.C. App. 282 (2011)]

We find it unreasonable to read *Pope* as standing for the proposition that expert evidence is mandated in all workers compensation cases to establish an increased risk of lightning strike injury when the majority of the cases relied upon by the Court in articulating its holding concluded that non-expert evidence was competent to support a determination on that issue. *See Reavis v. Reavis*, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986) (explaining that judicial decisions "must be interpreted like other written documents, not by focusing on isolated parts, but as a whole"). Indeed, in one of the few instances in which the *Pope* Court directly quoted another appellate court, our Supreme Court observed:

> The [Supreme Judicial Court of Massachusetts] closed its opinion with these words: "We think that it could have been found, *without expert evidence*, that a person in wet clothes, standing close to an iron bed and near to an electric light and electric wiring, in a building on the top of an exposed hill, was in a position of unusual danger from lightning."

*Pope*, 249 N.C. at 695, 107 S.E.2d at 527 (quoting *Bauer's Case*, 314 Mass. at 6, 49 N.E.2d at 120) (emphasis added).

The cases relied upon by the Supreme Court in *Pope* in reaching its conclusion set out "specific work-related factors within the job description or environment of the injured employee," 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 5.01[4] (2009) [hereinafter *Larson's*], such as "height above the surrounding area, nearness to trees or tall structures, nearness to metallic objects likely to attract lightning, or presence of wetness and other conditions facilitating transmission of lightning," that "enhanced the probability of injury from lightning[,]" *Larson's* § 5.01[1]. *See, e.g., Truck Ins. Exch.*, 77 Cal. App. 2d at 464, 175 P.2d at 886 (finding certain "facts" to be "common knowledge" and thus properly judicially noticed: that "a person standing upon a wet surface is more susceptible to electric shock than one who stands upon a dry surface; that as between a short gap and a long one in its path, an electric force is more likely to jump the short one, and hence, where atmospheric conditions are such that an electric force is about to be discharged toward the earth, an object which projects above the surrounding surface and is closest to the point of discharge and which is a ready conductor of electrical energy will be the one most likely to receive it"); *Chiulla de Luca*, 94 Conn. at 10, 107 A. at 612 (concluding that compensation commissioner could take judicial notice of fact that

"there is greater danger [of being struck by lightning] under a tall tree in a thunder shower than in other places"); *Bauer's Case*, 314 Mass. at 6, 49 N.E.2d at 120 (taking judicial notice of "common knowledge" that "a person in wet clothes, standing close to an iron bed and near to an electric light and electric wiring, in a building on the top of an exposed hill, [i]s in a position of unusual danger from lightning"); *Buhrkuhl*, 232 Mo. App. at 972, 95 S.W.2d at 846 (taking judicial notice of fact that isolated location and comparative height of barn in which employee took shelter "render[ed] it more likely to be struck by lightning than the ordinary object in that vicinity"); *Consolidated Pipe Line Co.*, 152 Okla. at 80, 3 P.2d at 852 (considering it a "matter of common knowledge" that a "dilapidated house" without windows or doors, containing metal, and surrounded by metal fencing is "much more liable to be struck by lightning . . . than the average house in the same locality"); *Nebraska Seed Co.*, 206 Wis. at 200-01, 239 N.W. at 432-33 (recognizing that "lightning is more apt to strike at higher elevations, such as the building into which [employee] took his team for shelter").

Rather than requiring expert evidence in each and every lightning strike case, we read *Pope* as sanctioning the use of non-expert evidence regarding case-specific "work-related factors" to support a determination that an employee's job exposed him or her to an increased risk of being struck by lightning. Our conclusion is reinforced by one of the leading workers' compensation commentators, who explains that, "in jurisdictions adhering to the increased-risk test, the parties would ordinarily do well *either* to arm themselves with the testimony of electrical experts *or be prepared to show an increased risk that arises from specific work-related factors within the job description or environment of the injured worker.*" *Larson's* § 5.01[4] (emphasis added). In "close cases," where "experts may differ" or where there are "no special circumstances associated with the duties of the worker that can be shown to have increased his or her risk," expert evidence may be warranted to "do justice to [the parties'] case . . . ." *Larson's* § 5.01[4]. We, however, decline to establish a "bright-line" rule requiring expert evidence in every workers' compensation case in order to establish that the employee's job exposed him or her to an increased risk of a lightning strike injury. Such a requirement would undermine the well-established principle that the Workers' Compensation Act "must be liberally construed to accomplish the humane purpose for which it was passed, *i.e.*, compensation for injured employees." *Barnhardt v. Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966), *overruled in part on other grounds by*

*Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986); *see also Consolidated Pipe Line Co.*, 152 Okla. at 74, 3 P.2d at 846 ("The courts have uniformly construed the words 'out of the employment' liberally and with a view to extending the scope of a remedial statute.").

Here, the Commission made numerous findings with respect to the relevant "work-related" factors set out in *Pope*: that plaintiff was working at a home construction site "locat[ed] at or near the top of [a] mountain, near some metal towers"; that the unfinished house "had a metal roof and weather vanes on top of the roof"; and, that plaintiff, at the time of the lightning strike, was standing in the "unfinished garage, which did not have doors on it," several feet away from an electrical drop cord and other metal or electrically charged objects. Based on these findings, the Commission concluded that "[t]he work conditions at the time of Plaintiff's injury [a]re consistent with several of the factors set forth in *Pope*, and the cases cited therein, as relevant to a finding of compensability under the 'increased risk' test in cases involving work-related injuries due to lightning strikes":

> Because Plaintiff was working at a high elevation that had a metal roof and an unfinished garage with no doors, and he was near metal and electrically charged objects such as the electrical drop cord and other tools and equipment used in furtherance of his work, his employment placed him at an increased risk of sustaining injuries due to lightning greater than members of the general public in that neighborhood, and therefore, the danger to which he was exposed was incident to his employment.

Aside from arguing that plaintiff was required to present expert evidence to establish that his employment exposed him to an "increased risk" of being struck by lightning, defendants do not challenge the sufficiency of the evidence to support the Commission's findings of fact or conclusions of law. In any event, we conclude that the non-expert evidence in this case, particularly plaintiff's testimony and the testimony of his uncle, Mr. Justice, describing the physical characteristics of the jobsite, supports the Commission's findings. The Commission's findings, in turn, support the conclusion that "circumstances, incidental to [plaintiff's] employment, peculiarly exposed him to risk of injury from lightning greater than that of other persons in the community." *Pope*, 249 N.C. at 698, 107 S.E.2d at 529-30. Defendants' argument is overruled.

II

**[2]** Defendants next contend that plaintiff failed to satisfy his burden of proving disability for the period of 12 July 2004 through 2 January 2005, and thus the Commission erroneously concluded that plaintiff is entitled to temporary total disability benefits for this period. It is well established that the "claimant ordinarily has the burden of proving both the existence and degree of disability." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 440, 342 S.E.2d 798, 807 (1986). "[I]n order to support a conclusion of disability, the Commission must find: (1) that [the] plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that [the] plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by [the] plaintiff's injury." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). A plaintiff may establish the first two elements through any one of four methods of proof:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

On the issue of disability, the Commission found:

> 7. [Plaintiff's uncle] took Plaintiff to Transylvania Community Hospital in Brevard, North Carolina, where he received treatment for a possible lightning strike injury. Plaintiff's chief complaints were pain in his right hand and left foot. X-rays of his right hand revealed closed right fourth (4th) and fifth (5th) metacarpal fractures. Plaintiff received morphine for pain. Plaintiff's brother visited him in the hospital, where he observed that Plaintiff's right hand had bruising and swelling that was not there the day before.

> 8. Although Plaintiff received a referral to an orthopaedic surgeon for further treatment of his right hand fractures, he did not

receive this treatment, due to the denial of his workers' compensation claim, and his lack of health insurance. Plaintiff did not receive any further treatment for his fractures, and was unable to earn wages in any employment from July 12, 2004 until he returned to work on January 3, 2005.

Based on these findings, the Commission concluded that, "[d]ue to Plaintiff's hand fractures and the lack of medical treatment needed to effect a cure, to give relief, and/or lessen his period of disability, Plaintiff was unable to return to his regular job hanging sheetrock, and his physical limitations resulting from his July 12, 2004 work injury impeded his ability to work or to find suitable work."

Defendants contend that because plaintiff failed to "produce *medical* evidence that he [wa]s physically or mentally unable to work in *any* employment as a result of his work-related injury," the Commission erred in concluding that plaintiff had established temporary total disability under *Russell's* first prong. In determining if a plaintiff has met the burden of proving loss of wage earning capacity under *Russell's* first prong, "the Commission must consider not only the plaintiff's physical limitations, but also [plaintiff's] testimony as to his pain in determining the extent of incapacity to work and earn wages such pain might cause." *Webb v. Power Circuit, Inc.*, 141 N.C. App. 507, 512, 540 S.E.2d 790, 793 (2000), *cert. denied*, 353 N.C. 398, 548 S.E.2d 159 (2001). "[M]edical evidence that a plaintiff suffers from genuine pain as a result of a physical injury, combined with the plaintiff's own credible testimony that [the] pain is so severe that [the plaintiff] is unable to work, may be sufficient to support a conclusion of total disability by the Commission." *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 8, 562 S.E.2d 434, 440 (2002), *aff'd per curiam*, 357 N.C. 44, 577 S.E.2d 620 (2003).

Here, the medical records indicate that when plaintiff was seen in Transylvania Community Hospital's emergency department immediately after the accident on 12 July 2004, he complained of pain in his right hand and left foot. His right hand was swollen and X-rays of plaintiff's hand showed closed right fourth and fifth metacarpal fractures. Plaintiff was initially given morphine for the pain, his right hand was placed in a splint, and he was discharged with a prescription of Percocet. Three days later, on 15 July 2004, Dr. G. Ruffin Benton, III, with Medical Associates of Transylvania, P.A., saw plaintiff for a follow-up, and plaintiff continued to complain that his right hand "hurt[]." Dr. Benton refilled the prescription for Percocet and referred plaintiff to an orthopaedic surgeon for an evaluation of his right hand. In addi-

tion to the medical evidence regarding the pain in plaintiff's fractured right hand, plaintiff testified that his right hand "hurt[] bad" and that he was "unable to work at all" from 12 July 2004 to 2 January 2005.

This Court, moreover, has held that a plaintiff's testimony regarding his or her pain and its effect on the plaintiff's ability to work is sufficient to support a determination of disability under *Russell's* first method of proof. *See Matthews v. Petroleum Tank Service, Inc.*, 108 N.C. App. 259, 265-66, 423 S.E.2d 532, 536 (1992) ("[T]he Commission, in its proper role as sole judge of the credibility of witnesses, found [plaintiff's] testimony that he was unable to work due to pain more credible than the expert testimony that [plaintiff] was capable of performing medium to light work."); *see also Boles v. U.S. Air, Inc.*, 148 N.C. App. 493, 499, 560 S.E.2d 809, 813 (2002) ("This Court has previously held that an employee's own testimony as to pain and ability to work is competent evidence as to the employee's ability to work."); *Knight*, 149 N.C. App. at 8, 562 S.E.2d at 440 (concluding that employee's testimony that "the pain in his lower back and left leg is so severe that, not only is he unable to work in any employment, he is often unable to undertake even simple chores, such as sweeping, for more than thirty minutes" was competent evidence supporting Commission's finding of disability under *Russell's* first prong); *Niple v. Seawell Realty & Insurance Co.*, 88 N.C. App. 136, 139, 362 S.E.2d 572, 574 (1987) (holding employee's own testimony regarding pain resulting from "physical exertion" was competent evidence regarding her "ability to engage in any activity"), *disc. review denied*, 321 N.C. 744, 365 S.E.2d 903 (1988). Expert evidence is thus not required under *Russell's* first prong. *See Matthews*, 108 N.C. App. at 265, 423 S.E.2d at 536 ("[Plaintiff's] testimony is competent evidence as to his ability to work, and the Commission chose to believe him."). Plaintiff's testimony regarding the pain in his fractured right hand and his inability to "work at all" is sufficient to support the Commission's determination that plaintiff was temporarily totally disabled during the period of 12 July 2004 to 2 January 2005. Defendants' argument is overruled.

III

**[3]** Defendants' final argument on appeal is that the Commission erred in concluding that, "[a]s a result of Plaintiff's July 12, 2004 work injury, Defendants are responsible for providing all reasonably necessary medical treatment for his injuries." "Subsequent to the establishment of a compensable injury under the Workers' Compensation Act, an employee may seek compensation under N.C.G.S. § 97-25 for additional medical treatment when such treatment lessens the period

of disability, effects a cure, or gives relief." *Pomeroy v. Tanner Masonry*, 151 N.C. App. 171, 182, 565 S.E.2d 209, 216 (2002); N.C. Gen. Stat. § 97-25 (2009).

Defendants point to plaintiff's testimony that, at the time he returned to work on 3 January 2005, he was able to use his right hand "pretty good." Defendants claim that this evidence "proves that plaintiff's hand has improved and that additional treatment is not necessary." Defendants' contention ignores competent evidence establishing that plaintiff's hand was x-rayed immediately after the accident, revealing closed right fourth and fifth metacarpal fractures, and that plaintiff was referred to an orthopaedic surgeon for evaluation of his hand, but was not seen because defendants denied plaintiff's workers' compensation claim and plaintiff did not have health insurance. Plaintiff testified that he had not been seen by "any medical personnel" since 15 July 2004 and that his hand had not been "fixed." Without, at the very least, the orthopaedic evaluation ordered by Dr. Benton, it cannot be determined whether the fractures in plaintiff's right hand have properly healed. We thus conclude that the Commission properly determined that plaintiff is entitled to additional medical treatment reasonably related to his compensable hand injury.

Affirmed.

Chief Judge MARTIN and Judge THIGPEN concur.