LELIA J. POPE, WIDOW OF JAMES LEONIDAS POPE, SR., DECEASED, EMPLOYEE, v. A. N. GOODSON, EMPLOYER, AND UNITED STATES FIDELITY & GUARANTY CO., CARRIER.

(Filed 18 March, 1959.)

**1. Master and Servant § 40c—**

Injury or death caused by lightning may be compensable as arising out of the employment when the circumstances incident to the employment subject the employee to a greater hazard or risk than that to which he would otherwise have been exposed or to which the public in general is exposed.

**2. Same—**

Only those injuries by accident which arise out of and in the course of the employment are compensable under our Workmen's Compensation Act, and it is required that the injury be traceable to the employment as a contributing proximate cause.

**3. Same—**

Whether an injury by accident arises out of the employment is a mixed question of law and of fact.

**4. Master and Servant § 51:　Evidence § 43—**

Where the hearing commissioner inquires into the qualification and competency of a witness presented as an expert in regard to lightning, his ruling that the witness is qualified as an expert will not be disturbed, there being nothing to show abuse of discretion.

**5. Evidence § 51—**

Where there is evidence that deceased was standing near a window and also that he was leaning with his left shoulder against the window casing, wearing wet clothing, when lightning came down the post or stud, the fact that hypothetical questions asked a lightning expert were predicated upon deceased's standing near the window, rather than against the casing, will not be held prejudicial.

**6. Master and Servant § 40c— Evidence held sufficient to support conclusion that the incidents of employment exposed the employee to the risk of lightning greater than that of persons in general.**

Evidence tending to show that a carpenter was caught in a storm while working, that he and other employees on the job went to a nearby

house under construction by the same employer to get out of the rain, that the house was practically complete, but that the electrical connections had not been made, and that the carpenter, while standing near a window in wet clothes, wearing a carpenter's nail apron with nails therein, a bolt of lightning struck the roof, ran down the post or stud of the window, struck the carpenter about his waistline and ran down his leg to the floor, killing him, that all damage to the clothes and marks on the body were from the waist down, that the nail apron was knocked off, a hole burned in it, and a majority of the nails in it fused, *is held* sufficient to support the conclusion that the circumstances of the carpenter's employment peculiarly exposed him to the risk of injury from lightning greater than that of others in the community, and to sustain an award of compensation.

APPEAL by defendants from *Bone, J.,* November Criminal Term 1958 of NEW HANOVER.

Proceeding under Workmen's Compensation Act to determine liability of defendants to widow, the sole dependent of James L. Pope, Sr., deceased employee of A. N. Goodson, heard at a criminal term by consent.

In addition to the jurisdictional determinations, based upon a stipulation of the parties, the operative findings of fact and conclusions of law of the Hearing Commissioner, affirmed by the Full Industrial Commission, and by the Superior Court Judge, follow:

On the morning of 15 August 1957 James L. Pope, Sr., a carpenter, was employed by A. N. Goodson, and was engaged with a fellow employee in nailing ceiling joists on a garage in the Town of Carolina Beach. Pope was wearing regular work clothes, and had tied around his waist a carpenter's cloth nail apron holding some #16 common nails and some #8 cut nails he was using in his work. While he was working, it began to rain, and his clothes became wet. As it continued to rain, Pope and his fellow employees went into a house adjacent to the garage, which was under construction by his employer from an officers' barracks brought from Fort Fisher, North Carolina. The house was a one-story, frame building without a chimney, 50 feet long, 25 feet wide, and 14 feet high from the ground to the outside plate. The house was covered, the flooring was in it, but the ceiling had not been put in, and the electrical connections had not been made. The windows had been installed. The doors were boarded up.

The other employees went to the back of the house, and sat down. Pope wearing his carpenter's nail apron walked to a window at the front of the house, and with his left side against the window casing was talking to his employer. After Pope had been in such position

about three or four minutes, a bolt of lightning struck the roof of the house immediately above his head. It knocked a hole in the roof six inches in diameter, then ran down the post against which Pope was leaning adjacent to the window, left the post, struck him about his waistline, and continued down his left leg to the floor, killing him.

The bolt of lightning burst Pope's left pants leg from the waist to the knees, knocked his left shoe from his foot, and his carpenter's nail apron six feet from his body, and burned a hole in the nail apron one and one-half inches in diameter. The nails in the nail apron were burned. His clothing above his waist was not damaged. The only marks on Pope's body were a half-inch cut on the inside of the hairline of his head on the right side coming down through his eyebrow and a severe burn on his left big toe.

"The deceased was exposed to a greater hazard from lightning on the occasion complained of than that to which the public generally was exposed; that he sustained an injury by accident arising out of and in the course of his employment on August 15, 1957, resulting in his death."

Upon the facts found and conclusions reached, the Industrial Commission awarded compensation, and this was affirmed on appeal to the Superior Court. From this latter ruling, the defendants appeal, assigning error.

*J. H. Ferguson for plaintiff, appellee.*
*Hogue & Hogue and R. L. Savage for defendants, appellants.*

Parker, J. The question for decision is whether the record permits the inference that the death of Pope resulted from an injury by accident which arose out of and in the course of his employment. An affirmative answer would uphold the judgment below; a negative response would reverse it.

The generally recognized rule is that where the injured employee is by reason of his employment peculiarly or specially exposed to risk of injury from lightning—that is, one greater than other persons in the community,—death or injury resulting from this source usually is compensable as an injury by accident arising out and in the course of the employment. *Fields v. Plumbing Co.*, 224 N.C. 841, 32 S.E. 2d 623; 99 C.J.S., Workmen's Compensation, Section 252; 58 Am. Jur., Workmen's Compensation, Section 260; Annotations: 13 A.L.R. 977; 40 A.L.R. 401; 46 A.L.R. 1218; 53 A.L.R. 1084; 83 A.L.R. 235. The numerous cases cited in these Annotations from A.L.R. show that when we come to the question of if and when an accidental in-

jury or death due to a true Act of God in the form of a bolt of lightning (*Bennett v. R.R.*, 245 N.C. 261, 96 S.E. 2d 31—petition for *certiorari* to the United States Supreme Court denied 13 May 1957, 353 U.S. 958, 1 L. Ed. 2d 909) arises "out of" the employment we meet with a diversity of judicial opinion expressed by the courts of the land. A part of the apparent conflict, however, may be explained by the varying circumstances and facts of the cases.

In *Netherton v. Lightning Delivery Co.* (1927), 32 Ariz. 350, 258 P. 306, practically all the cases dealing with injuries from lightning up to that time are collected, and the rule is laid down by the Court as follows: "When the workman *by reason of his employment,* is more exposed to injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment; when, however, it appears that nothing in the nature of the employment has exposed him to any more danger than that shared in common by the general community, the injury does not arise out of the employment and is not compensable."

In *Fields v. Plumbing Co., supra,* our Court has said: "The test is whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed."

Our Workmen's Compensation Act does not contemplate compensation for every injury an employee may receive during the time of his employment, but only those by accident arising out and in the course of his employment. This Court said in *Bryan v. T. A. Loving Co.*, 222 N.C. 724, 24 S.E. 2d 751, that: "Where an injury cannot fairly be traced to the employment as a contributing proximate cause, or comes from a hazard to which the workman would have been equally exposed apart from the employment or from a hazard common to others, it does not arise out of the employment. . . . The causative danger must be peculiar to the work and not common to the neighborhood."

*Nebraska Seed Co. v. Ind. Com.*, 206 Wis. 199, 239 N.W. 432, was an action by plaintiffs to review an award by the Industrial Commission to Lena Andrews, as compensation for the death of Fred Anderson. Fred Anderson was in the employ of the Nebraska Seed Company. On the day of his death, and while his day's work was not yet completed, he, with others similarly employed, sought shelter for himself and team from a thunderstorm in a building about 40 rods from where they were working. The building stood on an elevation slightly higher than the surrounding ground. Anderson was killed by lightning shortly after getting his team and himself into the building; at the same time two other men and eight horses were killed.

The Industrial Commission held that at the time of Anderson's death he was performing services growing out of and incidental to his employment; that lightning is more apt to strike at higher elevations, such as the building into which Anderson took his team for shelter, and concluded that the death of Anderson resulted because of hazard substantially increased by his employment, and that his widow is entitled to the benefit provided for in the Workmen's Compensation Law. In affirming the judgment of the Circuit Court, the Supreme Court of Wisconsin said: "The building into which he entered was so situated, and its height above the surrounding surface was such, as to increase the danger from lightning. It all resulted in an unusual risk, of such an accident, incidental to the employment. The evidence sustains the findings and warrants the conclusion that the death of Anderson resulted from a hazard substantially increased by reason of his employment, and it follows the judgment must be affirmed."

In *Buhrkuhl v. F. T. O'Dell Const. Co.,* 232 Mo. App. 967, 95 S.W. 2d 843, an employee on a road construction job was directed by a foreman, together with co-employees, to unhitch horses and seek shelter from a storm. They took refuge in a barn taller than other buildings on the farm which, during progress of work, was regarded as a kind of headquarters. While in the barn, with horses and men wet from the rain, a bolt of lightning struck the barn killing Thomas Buhrkuhl and six of the horses. It was held that a barn taller than other buildings on isolated farm was more likely to be struck by lightning than ordinary objects in vicinity, and that the evidence was sufficient to sustain a finding that the employment brought about excessive exposure to lightning, and hence arose out of employment within the meaning of the compensation act.

In *Consolidated Pipe Line Co. v. Mahon,* 152 Okla. 72, 3 P. 2d 844, a pipeliner, while in the discharge of his duties, took refuge, with some of his associates, from a rainstorm in an old, dilapidated, frame house with a floor. The windows and doors were removed. It looked like no one had lived in it for quite a while. He intended to resume work after the storm. There was a piece of tin back of him. There was a wire fence on three sides, and about 25 feet away from the house. While in the house he was struck and injured by lightning. The Industrial Commission awarded him compensation. The Oklahoma Supreme Court, in an elaborate opinion analyzing many cases of injury and death by lightning in connection with Workmen's Compensation Acts, upheld the award.

*Andrew v. Failsworth Industrial Society, Ltd.,* (1904), 2 K. B. 32, 90 L. T. 611, 73 L. J. K. B. N. S. 511, 68 J. P. 409, has been cited

extensively. The deceased, a bricklayer, was killed by lightning while working on a scaffolding at a height of about 23 feet from the ground. His position was held to have involved more than usual risk, because of the height of the scaffolding, and presumably its wet condition. The finding that the injury arose out of the employment was sustained on appeal. *Truck Ins. Exchange v. Ind. Accident Com'n.*, 77 Cal. App. 2d 461, 175 P. 2d 884, had substantially similar facts, a carpenter working on a wet roof, and a compensation award was upheld.

In *Fort Pierce Growers Ass'n v. Storey*, 158 Fla. 192, 29 So. 205, it was held that death of employee by lightning when he sought shelter under tarpaulin provided by employer, which was suspended between trees higher than surrounding growth, thereby increasing hazard of injury by lightning, resulted from a compensable accident arising out of and in the course of his employment.

In *Bauer's Case*, 314 Mass. 4, 49 N.E. 2d 118, an employee's clothes became wet during a rainstorm, while he was performing his duties. He went to employer's building on top of exposed hill where he stayed to change his clothes. While standing close to an iron bed and near to electric light and electric wiring, he was injured when lightning destroyed lights and electrical apparatus in building. The Supreme Judicial Court of Massachusetts reversed a decree of the Superior Court, and ordered a decree for the employee, holding that the employee sustained an injury arising out of and in the course of employment. The Court closed its opinion with these words: "We think that it could have been found, without expert evidence, that a person in wet clothes, standing close to an iron bed and near to an electric light and electric wiring, in a building on the top of an exposed hill, was in a position of unusual danger from lightning."

In *Chiulla De Luca v. Board of Park Com'rs.*, 94 Conn. 7, 107 A. 611, it was held that there was a personal injury arising out of and in the course of employment, where one employed to rake leaves in a park took shelter, during a thunderstorm of considerable violence, under a near-by tree, which was struck by lightning, and the workman killed. The Court said: "Obtaining shelter from a violent storm in order that he might be able to resume work when the storm was over was not only necessary to the preservation of the deceased's health, and perhaps his life, but was incident to the deceased's work, and was an act promoting the business of the master."

The defendants rely on *Fuqua v. Department of Highways*, 292 Ky. 783, 168 S.W. 2d 39, and *Deckard v. Trustees of Indiana University*, 92 Ind. App. 192, 172 N.E. 547. In both cases there was no

evidence which would show that the risk of being struck by lightning was increased by reason of the employment. There is such evidence in the instant case. As to the *Deckard* case, see *E. I. du Pont de Nemours Co. v. Lilly*, 226 Ind. 267, 79 N.E. 2d 387—a case which supports our position, and distinguishes the *Deckard* case, as we have.

In Larson's Workmen's Compensation Law, Vol. I, pp. 52-54, may be found a list of cases holding that the evidence was sufficient to show a special lightning hazard.

It would render this opinion unduly long were we to take up each case relating to injury or death due to lightning in Workmen's Compensation cases, and narrate its facts with the ruling of the court thereon, when all such information is readily obtainable from the sources to which we have called attention. There exists conflict in the opinions. But it would seem that the great majority of the courts have reached the conclusion that the workman is entitled to compensation for injuries produced by lightning in all cases where he was subjected to a danger from lightning greater than were the other people in the neighborhood; that is, Was the danger to which he was subjected one which was incident to the employment, or was it one to which other people, the public generally, in that neighborhood, were subjected?

Whether an injury by accident arose out of the employment is a mixed question of law and fact. *Horn v. Furniture Co.*, 245 N.C. 173, 95 S.E. 2d 521; *Poteete v. Pyrophyllite*, 240 N.C. 561, 82 S.E. 2d 693.

The evidence shows these facts: On the morning of 15 August 1957, Pope, a carpenter, and an employee of A. N. Goodson, was engaged with a fellow employee in nailing ceiling joists over a garage. He had tied around his waist a carpenter's nail apron containing some 16 penny nails and a few 8 penny nails he was using in his work. The 16 penny nails were made from iron and about 3¼ inches long. It began to rain. Goodson told Pope and the employee working with him, "there is no use to stay up there and get wet, work on the inside, we can do it later." Pope and other co-employees on the job went into a near-by house under construction by Goodson. This house was roofed, was enclosed with weatherboard, and was floored. The brickwork had not been done, and no chimney had been built. The electrical connections to the house had not been made. The windows were installed, and had panes and sashes in them. The door was nailed up. Goodson testified Pope's clothes were wet, when he came down from the top of the garage. Pope was wearing his nail apron, when he entered the house. L. J. Hilburn testified that Pope was standing near a window when the lightning struck the house. A. N. Goodson testi-

fied Pope was standing near a closed window that had the panes in it, when the lightning struck. J. H. Warick testified Pope was on the left side of the window leaning up against the window casing when lightning struck. Goodson was telling Pope what he wanted him to do. A bolt of lightning hit the house, knocking a hole through the roof about six inches in diameter. Goodson and Pope fell—Goodson was injured and Pope was killed. The window jamb down to the bottom of the window was split.

The top of Pope's pants was blown out from the waist to the knee. His left toe was burned. There was no damage to his clothes above the waistline. His left shoe was knocked off his foot, and his left sock was burning. His nail apron was knocked off, it had a hole burned in it, and a majority of the nails in it were fused.

R. Ladd Coble, a funeral director and embalmer, testified that after Pope's body was embalmed, dark streaks appeared, which appear on every body that has had electrical current go through it. These streaks never appear prior to embalming. The streaks on Pope's body were all below the naval area. In Coble's opinion the burn on Pope's left toe showed the lightning came out of that toe.

Defendants assign as error the refusal of the judge to sustain their assignment of error to the refusal of the Industrial Commission to sustain their assignment of error to the ruling of the Hearing Commissioner that Jerry A. Jones, Jr. was qualified as an expert witness to testify as to the effect lightning might have and its behavior. The qualifications and competency of this witness were fully inquired into by the Hearing Commissioner. There was substantial competent evidence to support the ruling of the Hearing Commissioner, and there is no showing that he abused his discretion in holding that he was an expert witness. This assignment of error is overruled. *In Re Humphrey,* 236 N.C. 142, 71 S.E. 2d 915, and the cases there cited.

Jones testified without objection that all metals and water are conductors of electricity. In response to a hypothetical question Jones testified in substance that if Pope was standing near a window in a house struck by lightning and was wearing wet clothing, that, in his opinion, would have caused him to be more susceptible to a blow of lightning. In response to another hypothetical question Jones testified if Pope was standing near a window in a house struck by lightning and wearing a nail apron around his waist containing nails that, in his opinion, the metal played an important part, because lightning seeks the path of least resistance, therefore, the metal being the nearest path of least resistance caused the lightning to go through to the ground. Then he was asked a hypothetical question based upon facts

in evidence as to whether he had an opinion as to what caused the lightning to strike Pope. He replied: "The charge in the earth was attracted by the charge from the cloud above, and it just so happened to come down at the exact point that the building was placed, striking the building. After it struck the building it followed the path of least resistance to the ground, Mr. Pope being in the line, in the path. It went through him to the ground mainly because of the metal in the nail bag that he had and the fact that he was wet."

Defendants assign as error the refusal of the judge to sustain their objections to the hypothetical questions, for the sole reason that each of the hypothetical questions used as one of its premises that Pope was standing near a window when the lightning struck the house, and "that all the evidence in the case shows that the deceased was leaning with his left shoulder against the window jamb and that the lightning came down the very post or stud against which he was leaning. Learned counsel have overlooked the testimony of L. J. Hilburn and A. N. Goodson, witnesses for claimant, both of whom testified Pope was standing near the window when the bolt of lightning struck. Goodson also testified Pope was standing with his left shoulder up against the window or right approximately against it. These assignments of error are overruled.

The evidence shows that Pope, when killed by lightning, by reason of his employment had on wet clothes, and had tied around his waist a nail apron containing nails, and that these circumstances, incidental to his employment, peculiarly exposed him to risk of injury from lightning greater than that of other persons in the community. Such being the case his death is compensable under our Workmen's Compensation Act as an injury by accident arising out of and in the course of his employment.

The evidence is sufficient to support the award.

All of the defendants' assignments of error are overruled. The judgment below is

Affirmed.