***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the named employee and the named Employer.
3. The carrier liable on the risk is correctly named above.
4. The plaintiff's average weekly wage will be determined by an Industrial Commission Form 22 Wage Chart.
5. Following the hearing in this matter, the parties were able to stipulate to an average weekly wage of $480.00.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On August 4, 2000, Plaintiff was employed with Dowty Air Conditioning, Inc. as an HVAC installer. Plaintiff worked outdoors and inside houses including crawl space and attics to install condensing units, refrigeration lines, ductwork, and wiring.
2. According to plaintiff, he sustained an electrical injury when he was crawling out of the crawl space, placed his hand on an air handler, saw a flash of lightning, and felt an electrical surge travel up his arm.
3. There were no witnesses to the alleged lightning strike.
4. Though plaintiff first reported that the lightning struck near where he was located and did not strike him personally, plaintiff later claimed that the lightning actually struck his left arm.
5. Immediately following his injury on August 4, 2000, plaintiff was transported by ambulance to the Carteret General Hospital Emergency Department, where he complained of left arm numbness and a headache. Plaintiff was treated and released on the same date.
6. Plaintiff returned to work on August 7, 2000, the first workday following his injury. Upon returning to work, plaintiff made no complaints of pain. Plaintiff missed no time from his job with Defendant because of his injury.
7. On September 11, 2000, plaintiff was terminated from his employment with Defendant for substandard performance.
8. Following his termination, plaintiff began working for Carteret Heating and Cooling, earning the same or greater wages as he earned with Defendant.
9. Plaintiff is currently employed with Ace Refrigeration, earning wages equal to or greater than he earned in his employment with Defendant.
10. After his treatment at Carteret General Hospital, plaintiff did not again seek medical treatment for his injuries until October 31, 2000, on which date he presented to Jack Orton, P.A., of Dr. James Croswell's office, complaining of pain in his left arm and shoulder and anterior chest pain. Mr. Orton did not believe that the electrical shock reported by plaintiff played a major role in plaintiff's complaints.
11. Pursuant to a referral from Mr. Orton, plaintiff presented to Dr. Ashley Stroud on November 2, 2000 for evaluation of his chest pain. Plaintiff's cardiovascular exam revealed a regular rate and rhythm without audible murmurs, rubs, or gallops. Dr. Stroud diagnosed plaintiff with atypical chest discomfort likely related to musculoskeletal and/or neurological damage following a lightning strike. Plaintiff did not return to Dr. Stroud for additional treatment.
12. On November 10, 2000, plaintiff presented to Dr. Kevin Good for a neurological examination. On that date, plaintiff reported that he did not have problems with his left arm until approximately three weeks prior. Dr. Good diagnosed plaintiff with possible electrical traumatic median neuropathy, possible cervical radiculopathy or plexopathy, and possible complex regional pain syndrome.
13. On November 17, 2000, electrodiagnostic studies performed by Dr. Good revealed reduced amplitude in the left ulnar nerve and the left medial cutaneous nerve of the forearm. A nerve conduction study was normal. Dr. Good opined that the test findings could suggest a plexopathy on the left, which is mild electrically and affecting limited sensory nerves. Dr. Good stated that plaintiff's prognosis was good.
14. Pursuant to an Industrial Commission Form 61 filed on February 16, 2001, Defendant denied the compensability of plaintiff's claim.
15. Plaintiff last treated with Dr. Good on February 23, 2001. On that date, Dr. Good noted that a cervical MRI revealed a C6-C7 central disc protrusion. Dr. Good noted that plaintiff's sensory response was improving and released plaintiff to return on an as-needed basis.
16. On February 8, 2002, plaintiff returned to Jack Orton, P.A., requesting another evaluation of his left arm. Mr. Orton informed plaintiff that his practice was not qualified to do a neurological evaluation and that he would need to be evaluated by a board certified neurologist.
17. None of plaintiff's treating physicians have taken plaintiff out of work or issued work restrictions on account of his injuries.
18. During his deposition, Jack Orton, P.A., testified that he never took plaintiff out of work on account of his injury and felt that plaintiff was capable of performing regular duty work at all times during his treatment.
19. During Dr. Good's deposition, Dr. Good testified that he never took plaintiff out of work.
20. At no point during Dr. Stroud's evaluation of plaintiff did she indicate that he was unable to work or warranted work restrictions because of his cardiac complaints.
21. None of plaintiff's treating physicians has indicated that plaintiff's injuries are permanent and no physician has assigned plaintiff a permanent impairment rating.
22. None of plaintiff's physicians has been able to state with any degree of medical certainty that plaintiff's symptoms are related to a lightning injury.
23. During his deposition, with regard to plaintiff's medical condition, Mr. Orton testified that "there's a possibility it was, but there was a possibility it wasn't" related to a lightning strike.
24. During Dr. Good's deposition, Dr. Good was only able to testify that plaintiff's symptoms "could be" related to a lightning strike. Dr. Good further testified that it was unusual that plaintiff's symptoms did not appear prior to October 31, 2000.
25. With respect to plaintiff's cervical disc protrusion, Dr. Good was unable to state that the lightning strike caused the protrusion and admitted that "so many different things" could cause that type of injury.
26. During her deposition, Dr. Stroud expressed no opinion as to whether plaintiff's symptoms were related to a lightning strike.
27. During Dr. Good's deposition on October 29, 2002, Dr. Good attempted to offer a new diagnosis of RSD. Dr. Good admitted that he had not evaluated plaintiff since February 23, 2001. Dr. Good also admitted that he never mentioned RSD as a diagnosis in any of his medical records prior to the deposition.
28. Plaintiff offered no evidence that he will need additional treatment for his injuries.
29. On November 2, 2000, plaintiff treated with Dr. Stroud for a one-time evaluation of his cardiac problems and has not returned since that date.
30. On February 23, 2001, Dr. Good released plaintiff from his care to return on an as-needed basis. Plaintiff has not returned for treatment with Dr. Good since that date.
31. Plaintiff last sought treatment from Mr. Orton on February 8, 2002. However, at the hearing, plaintiff admitted that the only reason he returned to Mr. Orton on that date was for purposes of this litigation.
32. Plaintiff has not shown that he was, by reason of his employment with Defendant, peculiarly or specially exposed to a risk of injury from lightning that is greater than other persons in the community.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff failed to produce sufficient evidence at the hearing to prove that a compensable injury by accident occurred on August 4, 2000. N.C. Gen. Stat. § 97-2(6).
2. Where an injured employee is by reason of his employment peculiarly or specially exposed to risk of injury from lightning that is greater than other persons in the community, injury resulting from this source is usually compensable as an injury by accident arising out of and in the course of the employment. Pope v. Goodson, 249 N.C. 690, 692,107 S.E.2d 524, 525 (1959). However, where an injury cannot fairly be traced to the employment as a contributing proximate cause, or comes from a hazard to which the workman would have been equally exposed apart from the employment or from a hazard common to others, it does not arise out of the employment. Id. (citing Bryan v. T. A. Loving Co., 222 N.C. 724,24 S.E.2d 751). The causative danger must be peculiar to the work and not common to the neighborhood. Id.
4. Plaintiff has failed to prove that his employment with Defendant placed him at an increased risk of being struck by lightning greater than that of the general public.
5. Plaintiff failed to produce sufficient evidence at the hearing to prove that he was disabled as a result of his August 4, 2000 injury. Rather, the evidence shows that plaintiff returned to work immediately following his injury and that any periods of unemployment were related to his September 11, 2000 termination and not his injury. None of plaintiff's physicians took him out of work or issued work restrictions on account of his injury.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each party shall bear its own costs.
This the 12th day of April 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/mlb