***********
Upon review of the competent evidence of record, with reference to the errors assigned, and in accord with the directives of the North Carolina Court of Appeals, the Full Commission, upon reconsideration of the evidence, enters the following Opinion and Award. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. Plaintiff contends and Defendants deny that he sustained a compensable injury by accident arising out of and in the course of his employment on July 12, 2004.
3. Defendant-Employer is a potential statutory employer under N.C. Gen. Stat. § 97-19, and Plaintiff did not receive wages from Defendant-Employer.
4. Plaintiff's average weekly wage is an issue that will have to be determined by the North Carolina Industrial Commission.
5. Plaintiff did not receive any indemnity or medical compensation resulting from the alleged July 12, 2004 work injury.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Various documents, including:
 i. North Carolina Industrial Commission forms and filings;
 ii. Defendants' Motion to Add Randy Heatherly/CDS Drywall as a Defendant dated January 11, 2005;
 iii. Plaintiff's medical records from Medical Associates of Transylvania, P.A.;
 iv. Plaintiff's medical records from Transylvania Community Hospital; *Page 3 
 v. Plaintiff's medical bills from Transylvania Community Hospital;
 vi. Plaintiff's discovery responses;
 vii. Chain of custody document documenting transfer of custody of telephone from Mr. Daniel Bruce Hollingsworth to Mr. Sean Madison Fokes, B.S.E.E., P.E. for inspection;
 viii. Wage records from Mr. Daniel Bruce Hollingsworth documenting wages paid to Mr. Randy Keith Heatherly/CDS Drywall.
 ix. Exhibit to the deposition of Mr. Sean Madison Fokes, B.S.E.E., P.E., consisting of the telephone used by Plaintiff on July 12, 2004, which the parties mailed to the North Carolina Industrial Commission.
 b. Plaintiff's Exhibit One (1) — Plaintiff's Amended Answers to Interrogatories.
 *********** ISSUES
The issues to be determined are:
1. Whether Mr. Randy Keith Heatherly/CDS Drywall should be added as a party defendant to these proceedings under N.C. Gen. Stat. § 97-19?
2. Whether Plaintiff was an employee of Mr. Randy Keith Heatherly/CDS Drywall at the time of his alleged July 12, 2004 work injury?
3. Whether Mr. Randy Keith Heatherly/CDS Drywall carried workers' compensation insurance coverage at the time of Plaintiff's alleged July 12, 2004 work injury? *Page 4 
4. Whether Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on July 12, 2004?
5. Whether Plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
6. What is Plaintiff's correct average weekly wage and compensation rate?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years of age, with a date of birth of January 12, 1962. Plaintiff's employment history consists primarily of work in the construction industry, including electrical and drywall work. On July 12, 2004, Plaintiff's brother, Mr. Randy Keith Heatherly, owner of CDS Drywall, employed Plaintiff as a drywall hanger and framer.
2. Randy Heatherly testified that he paid Plaintiff between $500.00 and $600.00 per week in cash. Plaintiff testified that the Form 18 filed on August 5, 2004 listing his average weekly wage as $500.00 is correct. Based upon the testimony of Plaintiff and Randy Heatherly, the Form 18 indicating that Plaintiff's wages are $500.00 per week is correct. The parties did not present a Form 22 wage chart as evidence of wages. For exceptional reasons, the Full Commission finds that using the wages of $500.00 per week as stated on the Form 18 will most nearly approximate the amount that Plaintiff would be earning were it not for his work injury. Thus, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's average weekly wage at all times relevant to these proceedings was $500.00, yielding a compensation rate of $333.35. *Page 5 
3. In July 2004, Plaintiff was working for Randy Heatherly at a job site where a new house was being built on Ridge Mountain in Brevard, North Carolina in a location at or near the top of the mountain, near some metal towers. The house under construction had a metal roof and weather vanes on top of the roof. Plaintiff and the other members of the construction crew set up their tools and equipment in the unfinished garage, which did not have doors on it, and ran all of the electrical cords for their work equipment from the garage to various parts of the house. Plaintiff was hanging drywall inside the house, along with his uncle, Mr. Billy Cole Justice.
4. On July 12, 2004, the construction crew stopped work early due to inclement weather, including rain, thunder, and lightning. Plaintiff called his brother on a "landline" telephone in order to inform him that the construction crew was finishing up on the job site, due to the rain, thunder, and lightning. While talking on the telephone with his brother, Plaintiff stood inside the unfinished garage, with his left leg on the floor and his right leg propped up against the drywall, approximately five (5) feet from the open entrance and several feet from an electrical drop cord and outlet from which the construction crew powered their tools that they used in constructing the house. Lightning was striking outside and sparks were flying from the electrical drop cord. Plaintiff suddenly received an electrical charge or jolt from the lightning, which picked him up into the air and threw him backwards approximately eight (8) feet from where he had been situated, causing him to strike his head, shoulders, and right arm on the concrete floor. Though dazed and confused, Plaintiff felt pain and a burning sensation in his right hand and left foot, and was aware that his uncle, Mr. Justice, was present and assisting him.
5. The testimony of Plaintiff's brother confirms that something happened while he was on the telephone with Plaintiff. Plaintiff's brother never heard him speak, but only heard a loud bang followed by the telephone disconnecting on his end. Shortly afterwards, the *Page 6 
construction crew called Plaintiff's brother and informed him that they were en route with Plaintiff to the hospital, and that Plaintiff had been hit by lightning.
6. Mr. Justice, who was standing in the door opening leading from the house into the attached garage at the time of the incident, witnessed Plaintiff being picked up and thrown approximately eight (8) feet, and landing on his head and shoulders. Mr. Justice testified that "[t]here were sparks coming out of the drop cord and all where the lightning was hitting all around us." Once Plaintiff hit the floor, Mr. Justice ran to help get him up. He gathered the tools, and took Plaintiff to the hospital. The Full Commission finds, based upon the greater weight of the evidence, that Mr. Justice's testimony is uncontradicted, credible, and supports a finding that Plaintiff sustained some type of electrical charge or jolt from the lightning, which lifted him into the air, threw him backwards, and caused him to land on the concrete floor, hitting his head, shoulders, and right arm. The Full Commission finds, based upon the greater weight of the evidence, that the electrical charge which lifted Plaintiff into the air was caused by lightning.
7. Mr. Justice took Plaintiff to Transylvania Community Hospital in Brevard, North Carolina, where he received treatment for a possible lightning strike injury. Plaintiff's chief complaints were of pain in his right hand and left foot. X-rays of his right hand revealed closed right fourth (4th) and fifth (5th) metacarpal fractures. Plaintiff received morphine for pain. Plaintiff's brother visited him in the hospital, where he observed that Plaintiff's right hand had bruising and swelling that was not there the day before.
8. Although Plaintiff received a referral to an orthopaedic surgeon for further treatment of his hand fractures, he did not receive this treatment, due to the denial of his workers' compensation claim, and his lack of health insurance. Plaintiff did not receive any *Page 7 
further treatment for his hand fractures, and was unable to earn wages in any employment from July 12, 2004 until he returned to work on January 3, 2005.
9. The Full Commission finds, based upon the greater weight of the evidence, that Randy Heatherly did not have workers' compensation insurance coverage for his employees at the time of Plaintiff's July 12, 2004 work injury. The Full Commission further finds as fact that The Hollingsworth Company, Inc. was aware that Randy Heatherly did not have workers' compensation insurance coverage, and thus took money out of contract payments to Randy Heatherly in order to pay the workers' compensation insurance premiums for Randy Heatherly and his employees, including Plaintiff.
10. The Full Commission finds, based upon the greater weight of the evidence, that Stonewood Insurance Company provided workers' compensation insurance coverage to The Hollingsworth Company, Inc. at all times relevant to these proceedings, and is responsible for paying any and all workers' compensation benefits to Plaintiff for his July 12, 2004 work injury. The Full Commission further finds that Randy Heatherly should not be added as a party defendant to these proceedings under N.C. Gen. Stat. § 97-19.
11. Although Plaintiff alleges that he sustained a direct lightning strike, the evidence is disputed in this regard. It is undisputed, however, that Plaintiff sustained an injury due to an electrical charge or jolt caused by lightning. As to whether the electrical charge or jolt came through the telephone line, Defendants' expert witness, Mr. Sean Madison Fokes, B.S.E.E., P.E., a licensed electrical engineer, testified that the lack of physical damage to the telephone indicates that there was no electricity passing through it. Plaintiff does not contend that the lightning strike necessarily came through the phone line. *Page 8 
12. The Full Commission finds, based upon the greater weight of the evidence, that lightning hit some portion of the premises near Plaintiff, causing this area to become electrically charged, and transmitting this electrical charge to Plaintiff. The electrical charge could have come from lightning striking the electrical drop cord, other tools or work equipment, or some portion of the unfinished garage near the place where Plaintiff was standing.
13. In weighing the evidence, the Full Commission finds that it is not necessary that Plaintiff's evidence establish that the electricity came through the telephone line, or that he sustained a direct lightning strike. The greater weight of the evidence, especially the eyewitness testimony of Mr. Justice, is sufficient to establish that Plaintiff sustained an electrical charge or jolt, either by lightning hitting the electrical drop cord, other tools or equipment, or some portion of the unfinished garage near the place where Plaintiff was standing, thereby transmitting an electrical charge or jolt to him. The greater weight of the evidence further shows that the electrical charge or jolt from the lightning lifted Plaintiff into the air and threw him backwards approximately eight (8) feet onto the concrete floor.
14. The Full Commission finds, based upon the greater weight of the evidence, that an electrical charge or jolt from lightning caused Plaintiff to be thrown to the concrete floor, and to sustain his right hand fractures. The Full Commission further finds that Plaintiff's work at or near the top of a mountain near some metal towers at a home construction site that had a metal roof with weather vanes while standing in an unfinished garage with no doors with his left leg on the floor and his right leg raised and propped up against the drywall approximately five (5) feet from the open entrance within several feet from an electrical drop cord and power tools exposed him to an increased risk of sustaining a lightning strike over that of the general public in that *Page 9 
neighborhood. As such, the danger to which Plaintiff was exposed was incident to his employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with Defendant-Employer on July 12, 2004 when lightning struck tools and equipment used in the furtherance of his work and located either inside the house, or in some other part of the open garage near him. N.C. Gen. Stat. § 97-2(6) (2007). The electrical charge or jolt due to lightning lifted Plaintiff up into the air and threw him backwards, causing him to land on his head, shoulder, and right arm. As a result of being lifted into the air and landing on the concrete floor, Plaintiff suffered fractures of his right hand. The electrical charge or jolt to Plaintiff due to the lightning and his resulting fall constituted an unlooked for and unexpected event, and the interruption of his normal work routine. Harding v.Thomas Howard Co., 256 NC 427 (1962).
2. In Pope v. Goodson, the North Carolina Supreme Court held that the proper legal standard to apply in cases addressing work-related injuries due to lightning strikes is whether "the danger to which [the employee] was subjected [was] one which was incident to the employment, or was it one to which other people, the public generally, in that neighborhood, were subjected?" Pope v.Goodson, 249 N.C. 690, 696, 107 S.E.2d 524, 528 (1959). In so doing, the Supreme Court adopted the "increased risk" test to be applied in work-related injuries due to lightning strikes.Heatherly v. The Hollingsworth Company, ___ N.C. App. ___, *Page 10 658 S.E.2d 30, 32 (2008), citing, Pope,249 N.C. 690, 107 S.E.2d 524, (1959). Thus, the issue to be determined in this case is whether Plaintiff's work at the job site on Ridge Mountain in Brevard, North Carolina put him at an increased risk of sustaining injuries due to lightning over that of members of the general public in that neighborhood.
3. In adopting the "increased risk" test, the Supreme Court conducted a thorough survey of cases involving work-related injuries due to lightning strikes in all of the states up to that time. Some of the factors the Supreme Court found relevant in applying the "increased risk" test for injuries due to lightning strikes were "that lightning is more apt to strike at higher elevations," and that buildings lacking doors or windows, or that are either near metal objects such as pieces of tin or wire fences, or that contain such items, are more likely to attract lightning. Pope,249 N.C. 690, 107 S.E.2d 524, (1959), citing, Nebraska SeedCo. v. Industrial Commission,206 Wis. 199, 239 N.W. 432, 433 (1931); Consolidated Pipe LineCo. v. Mahon, 152 Okl. 72, 3 P.2d 844 (1931).
4. In the case at bar, the Full Commission found as fact that Plaintiff was working at a home construction site in a location at or near the top of a mountain near some metal towers; that the house under construction had a metal roof and weather vanes on top of the roof; that at the time of the lightning strike giving rise to Plaintiff's injuries, he was standing in an unfinished garage that had no doors, with his left leg on the floor and his right leg propped up against the drywall, approximately five (5) feet from the open entrance and several feet from an electrical drop cord; and that the unfinished garage was the place where the construction crew working at this jobsite connected their power tools to electrical outlets and stored their other work equipment. The work conditions at the time of Plaintiff's injury were consistent with several of the factors set forth inPope, and the cases cited therein, as relevant to a finding of *Page 11 
compensability under the "increased risk" test in cases involving work-related injuries due to lightning strikes. Id. Because Plaintiff was working at a high elevation that had a metal roof and an unfinished garage with no doors, and he was near metal and electrically charged objects such as the electrical drop cord and other tools and equipment used in the furtherance of his work, his employment placed him at an increased risk of sustaining injuries due to lightning greater than members of the general public in that neighborhood, and therefore, the danger to which he was exposed was incident to his employment. Pope,249 N.C. 690, 107 S.E.2d 524, (1959).
5. The medical records and lay testimony in this case are sufficient to establish a causal relationship between Plaintiff's July 12, 2004 work injury and the hand fractures diagnosed later the same day. This is not a case that involves complex medical issues, such that expert testimony is needed in order to establish the cause and effect between being thrown up into the air and landing on a concrete floor and sustaining hand fractures. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164 (1980).
6. As a result of Plaintiff's July 12, 2004 work injury, Defendants are responsible for providing all reasonably necessary medical treatment for his injuries. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2007).
7. For exceptional reasons, using the wages of $500.00 per week as stated on the Form 18 will most nearly approximate the amount that Plaintiff would be earning were it not for his work injury. Plaintiff's average weekly wage at all times relevant to these proceedings was $500.00, yielding a compensation rate of $333.35.
8. Due to Plaintiff's hand fractures and the lack of medical treatment needed to effect a cure, to give relief, and/or to lessen his period of disability, Plaintiff was unable to return to his regular job hanging sheetrock, and his physical limitations resulting from his July 12, 2004 *Page 12 
work injury impeded his ability to work or to find suitable work. Plaintiff was temporarily and totally disabled from any employment from the time of his July 12, 2004 work injury through January 2, 2005. Russell v. Lowes ProductionDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Defendants are liable for paying Plaintiff temporary total disability compensation benefits for the period that he was unable to work or find suitable employment at the rate of $333.35 per week. N.C. Gen. Stat. § 97-29 (2007).
9. Randy Heatherly did not have workers' compensation insurance coverage for his employees at the time of Plaintiff's July 12, 2004 work injury. The Hollingsworth Company, Inc. was aware that Randy Heatherly did not have workers' compensation insurance coverage, and thus took money out of contract payments to Randy Heatherly in order to pay the workers' compensation insurance premiums for Randy Heatherly and his employees, including Plaintiff. N.C. Gen. Stat. § 97-19 (2007).
10. Stonewood Insurance Company provided workers' compensation insurance coverage to The Hollingsworth Company, Inc. at all times relevant to these proceedings, and is responsible for paying any and all workers' compensation benefits to Plaintiff for his July 12, 2004 work injury. Randy Heatherly should not be added as a party defendant to these proceedings under N.C. Gen. Stat. § 97-19. Id.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 13 
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $333.25 per week from July 12, 2004 through January 2, 2005. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's July 12, 2004 work injury, including any future medical expenses for Plaintiff to receive treatment from an orthopaedic surgeon for his hand fractures, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to provide relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff.
4. Defendants shall pay the costs of these proceedings.
5. Plaintiff's entitlement to further indemnity compensation, if any, is reserved.
This the ___ day of April 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG *Page 14 
CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER